THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HENRY CHAPMAN, JR., Defendant-Appellant.

First District (4th Division)    No. 80-1142

Opinion filed March 19, 1981.

James J. Doherty, Public Defender, of Chicago (James L. Rubens, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Richard Burke, and Barry A. Gross, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The defendant, Henry Chapman, Jr., was charged by information with committing armed robbery at an ice cream shop in Forest Park, Illinois. Following trial by jury he was found guilty and sentenced to a term of 10 years. On appeal, the defendant contends that: (1) he was not identified as the offender beyond a reasonable doubt; (2) the State did not prove beyond a reasonable doubt that a gun was used in the commission of the offense; (3) the failure of the trial court to instruct the jury *sua sponte* on robbery constituted reversible error; (4) he was denied effective assistance of counsel because his attorney failed to tender a jury instruction on the offense of robbery; and (5) he was deprived of his right to a fair trial by the prosecutor's improper remarks during closing argument.

Cathy E. Lauer testified that she was working at the Baskin-Robbins

Ice Cream Shop in Forest Park, Illinois on the afternoon of May 22, 1978. At approximately 1:50 p.m., the defendant entered the shop. The shop was well illuminated by fluorescent and natural light.

Lauer approached the defendant. She heard him mumbling. At first she did not understand what he was saying. After he repeated himself several times she realized that he was asking her to open the cash register. Lauer said "no" and told the defendant to go elsewhere. The defendant was fumbling with something under his shirt. He had his hand on an object which was bulging under the shirt.

The defendant glanced at what was under his shirt and then looked out the door. At first Lauer thought he was acting in an ordinary manner. Later she noticed that he began to get nervous. The defendant moved closer to the cash register. He said "open it." Lauer said she would have to "push something" to open it. The defendant told her to do so. Lauer saw a dark brown metal object inside the defendant's shirt. She thought the object was a gun.

The defendant was a foot and a half from Lauer. He told her that he was going to "count to three." The defendant moved closer to Lauer and his shirt opened. She saw the cylinder of a gun. The rest of the gun was covered by the defendant's hand. Lauer looked at the defendant, looked at the gun, then opened the cash register.

The defendant reached over the register with his left hand. With his right hand he "made a motion like he stuck the gun farther in" under his shirt. He then grabbed for the money in the register with his right hand. Lauer grabbed the defendant's arms and hollered for the manager. The defendant ran out the front door of the store with the money.

On cross-examination Lauer admitted that at the preliminary hearing she stated "he opens his shirt up and there at the cash register I see, I can't really see that good, but I saw something that was metal. I'm not positive of what it was, but I thought it was a gun. I believe it's a gun."

The manager of the shop, Mel Heroldt, testified that he and Cathy Lauer ran out the back door of the shop. He saw the defendant heading for a car parked behind the store. He yelled for the defendant to freeze. The defendant was sitting in his car. Heroldt went up to the side of the defendant's car.

The defendant told Heroldt that he had a wife and child. Heroldt responded that so did everyone else. The defendant handed the money to Heroldt and asked whether he could leave his car. Heroldt said that he could. The defendant got out of his car, picked up the hat he had dropped, entered his car and drove away.

Both Lauer and Heroldt described the defendant as being 6' 1" tall and weighing approximately 185 pounds. Both witnesses were able to identify the defendant's photograph from a group of photographs shown

to them by the police on the day following the robbery. Lauer stated that she observed the defendant in the store for "three or four, maybe five" minutes during which time the defendant was 10 inches to 2 feet away from her. She also observed the defendant for 30 seconds outside the store. Heroldt stated that he observed the defendant between 45 and 75 seconds. Lauer and Heroldt identified the defendant at trial as the offender.

Heroldt told the police that the offender had been driving an old blue Buick and he gave them the license plate number. The police used this information to determine that the car was owned by the defendant.

The defendant testified that at the time of occurrence he was approximately 6'1" tall and weighed about 157 pounds. At the time of the occurrence he wore heavy, bushy sideburns which extended nearly to his chin. He stated that his Buick was green, not blue. His car was stolen on May 21, 1978. He next saw his car on May 24, 1978, near the Eisenhower Expressway. He denied committing the armed robbery and said he had never seen Lauer or Heroldt before.

The jury was instructed on armed robbery. Defense counsel did not object to the armed robbery instruction nor tender a robbery instruction.

The defendant first contends that he was not identified as the offender beyond a reasonable doubt. In support of this contention the defendant argues that neither Lauer nor Heroldt had sufficient opportunity to view the offender at the time of the crime, that both witnesses failed to mention that the defendant had sideburns, and that both witnesses testified that the offender weighed 185 pounds, while the defendant testified that at the time of the occurrence he weighed only 157 pounds.

■■■ That testimony of the State's witnesses differed with the defendant's testimony on the issue of how much he weighed and whether he wore sideburns at the time of the robbery does not render the identification evidence so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt that the defendant was the offender. Rather, these discrepancies are largely questions of credibility which were resolved against the defendant by the jury. As stated by our supreme court when considering a similar situation in *People v. Stringer* (1972), 52 Ill. 2d 564, 568, 289 N.E.2d 631, 634, " '[W]e may not substitute our judgment for that of a jury on questions involving the weight of the evidence or the credibility of the witnesses * * *.' "

■■ Further, where the identification of the accused is at issue, the positive identification by a single witness is sufficient to support a conviction, even though such testimony is contradicted by that of the accused, provided the witness is credible and had ample opportunity for observation. (*People v. Stringer.*) Here, Lauer testified that the store was

well illuminated from natural sunlight as well as from the shop's fluorescent lighting. She observed the defendant in the store for "three or four, maybe five" minutes during which time the defendant was 10 inches to 2 feet away from her. Lauer observed the defendant for an additional 30 seconds outside the store. She gave a detailed description of the defendant to the police. Lauer was able to identify the defendant's photograph from a group of photographs on the day following the robbery. Her identification of the defendant as the offender during trial was positive, uncontradicted and unshaken during cross-examination. Similarly, Heroldt observed the defendant for a period of time lasting between 45 and 75 seconds. He conversed with the defendant. Heroldt was able to identify the defendant's picture from photographs which the police showed him on the day following the robbery. Heroldt's in-court identification of the defendant was positive, uncontradicted and unshaken during cross-examination. We conclude that the witnesses had ample opportunity to observe the defendant and that their testimony was clear and convincing. The alleged discrepancies between their description of how the defendant looked on the date of the robbery and his description of how he looked are not sufficient to raise a reasonable doubt that he was the offender.

■■ The defendant next contends that the State did not prove beyond a reasonable doubt that a dangerous weapon was used in the commission of the offense. He argues that the testimony concerning this issue was contradictory and improbable. That the victim saw only a portion of a gun is not evidence that a gun was not used. (*People v. Malaszenko* (1979), 76 Ill. App. 3d 1, 393 N.E.2d 1350.) The victim's testimony that she saw a shining object in the defendant's hand which she thought was a gun or a knife has been held to be sufficient evidence of a dangerous weapon to sustain an armed robbery conviction. (*People v. Moore* (1973), 14 Ill. App. 3d 361, 302 N.E.2d 425.) Here, Lauer testified that she saw a dark brown metal object which she thought was a gun and that later she saw the cylinder of the gun. Her testimony was sufficient evidence from which the jury could determine that a dangerous weapon was used in the commission of the crime.

■■ The defendant contends that Lauer's testimony concerning whether he was armed with a dangerous weapon should not have been believed because it was inconsistent with her testimony that she resisted the defendant's attempt to rob the store and was inconsistent with Heroldt's testimony that the defendant turned the stolen money over to him upon request. The defendant also notes that the State did not produce a gun at trial. The credibility of witnesses and the weight to be given their testimony is a question of fact. (*McDonald v. Industrial Com.* (1968), 39 Ill. 2d 396, 235 N.E.2d 824; *Servbest Foods, Inc. v. Emessee Industries,*

*Inc.* (1980), 82 Ill. App. 3d 662, 403 N.E.2d 1.) We believe it was within the province of the jury to believe Lauer's testimony concerning whether the defendant was armed with a dangerous weapon notwithstanding the inconsistencies alleged by the defendant.

■■ The defendant next contends that the trial court's failure to instruct the jury on robbery was reversible error because, where there is some evidence which if believed by a jury would reduce a crime to a lesser included offense, an instruction defining that offense should be given. (*People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756; *People v. Malaszenko.*) The State contends that the defendant waived this issue for purposes of appeal since he failed to object to the instructions given at trial and did not tender a robbery instruction below.

■■ Generally, the failure to make an objection at trial to an error in jury instruction waives the issue for appeal. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) Under this waiver rule, a party is not permitted to gain the advantage of obtaining a reversal based upon his own failure to act. (*People v. Roberts.*) As stated by the supreme court in *People v. Underwood* (1978), 72 Ill. 2d 124, 129, 378 N.E.2d 513, 516, " 'Enlightened trial practice does not permit counsel under the guise of trial strategy to sit idly by and permit instructions to be given the jury without specific objection and then be given the advantage of predicating error thereon * * * .' "

■■ However, in criminal cases the waiver rule will not prevent review of "substantial defects" in jury instructions if "the interests of justice require." (Ill. Rev. Stat. 1979, ch. 110A, par. 451(c).) This was held to be a limited exception to the waiver rule "to be used to correct 'grave errors' [citations], or to be applied where the case is close factually and fundamental fairness requires that the jury be properly instructed." *People v. Roberts* (1979), 75 Ill. 2d 1, 14, 387 N.E.2d 331, 337.

We do not believe that the instant case is so factually close as to invoke the application of the limited exception to the waiver rule. Lauer was face to face with the defendant during the commission of the crime. She identified him from a group of photographs on the day following the crime and again at trial. Heroldt saw the defendant flee the store just after the robbery. The defendant returned the proceeds of the robbery to Heroldt. Heroldt identified the defendant from a group of photographs and again at trial. The license plate number which Heroldt gave to the police indicated that the car was owned by the defendant. Only the defendant's testimony contradicted that of Lauer and Heroldt.

Nor do we believe that the failure of the trial court to instruct the jury *sua sponte* on robbery where no such instruction was tendered, constituted grave error. Rather, this is an example of where the waiver rule will be applied to prevent a party from gaining the advantage of obtaining a

reversal based upon his own failure to act. (*People v. Roberts; Finfrock v. Eaton Asphalt Co.* (1976), 41 Ill. App. 3d 1020, 355 N.E.2d 214.) Defense counsel may decide not to request a robbery instruction where armed robbery is charged as a strategy to preclude the jury from reaching a compromise verdict of robbery, rather than a verdict of acquittal or armed robbery. (See *People v. Keagle* (1967), 37 Ill. 2d 96, 224 N.E.2d 834.) For this reason it may be reversible error for the trial court to instruct the jury *sua sponte* on a lesser-included offense. *People v. Gore* (1979), 72 Ill. App. 3d 171, 390 N.E.2d 925; *People v. Spataro* (1979), 67 Ill. App. 3d 69, 384 N.E.2d 553; see also *People v. Keagle; People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.

■■ Similarly, because defense counsel may have decided not to request the robbery instruction as a strategy to preclude a compromise verdict, we cannot accept the defendant's contention that he was denied effective assistance of counsel because his attorney failed to request a robbery instruction. Errors in judgment and trial strategy do not establish incompetency of counsel. *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.

■■ Finally, the defendant contends that he was deprived of his right to a fair trial because of various improper remarks made by the prosecutor during closing argument. The issue of whether the remarks constitute reversible error was not raised in the defendant's motion for a new trial. Therefore, the issues are waived for purposes of review. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Although under certain circumstances this court may, as a matter of grace, take notice of errors that have not been properly preserved for review, we find no reason in the instant case to depart from the general rule set forth in *Pickett*. Substantial rights are not involved, and the defendant does not argue to the contrary. And, as stated above, the evidence is not closely balanced. This is not therefore an appropriate case for the application of the so-called plain-error rule. See *People v. Pickett*.

Accordingly the judgment of the circuit court is affirmed.

Affirmed.

ROMITI, P. J., and JOHNSON, J., concur.