# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Hardin*, 2012 IL App (1st) 100682

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER HARDIN, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-10-0682 |
| Filed | August 22, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant did not overcome the presumption that the trial judge was impartial, regardless of the judge's comments after all of the evidence had been presented, since those comments were made in the context of defendant's own testimony; however, one of defendant's two convictions for aggravated discharge of a firearm in the direction of a vehicle occupied by a peace officer was vacated under the one-act, one-crime doctrine, even though the vehicle was occupied by two officers, because defendant was only charged with firing at one vehicle. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-8348; the Hon. James Michael Obbish, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Benjamin A. Wolowski, all
of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg,
Annette Collins, and Kathryn A. Schierl, Assistant State's Attorneys, of
counsel), for the People.

Panel        JUSTICE MURPHY delivered the judgment of the court, with opinion.
Justice Neville concurred in the judgment and opinion.
Justice Salone concurred in part and dissented in part, with opinion.

## OPINION

¶ 1 Following a bench trial, defendant Christopher Hardin was found guilty of two counts of aggravated discharge of a firearm in the direction of a vehicle known to be occupied by a peace officer and one count of aggravated discharge of a firearm. Defendant was sentenced to two 10-year terms of imprisonment for aggravated discharge of a firearm in the direction of a vehicle known to be occupied by a peace officer and one 8-year term for aggravated discharge of a firearm, to run concurrently. On appeal, defendant contends that he was denied a fair trial before an unbiased trier of fact where the judge determined his guilt of aggravated discharge of a firearm in the direction of a vehicle known to be occupied by a peace officer before he testified and that one of his convictions for that crime must be vacated pursuant to the one-act, one-crime doctrine. For the reasons that follow, we vacate one of defendant's convictions for aggravated discharge of a firearm in the direction of a vehicle known to be occupied by a peace officer and affirm in all other respects.

¶ 2                             BACKGROUND

¶ 3 Defendant was charged with multiple crimes for allegedly firing a gun in the direction of John Sharp and a vehicle occupied by two Chicago police officers on April 16, 2008. The State proceeded to trial on two counts of attempted first degree murder of a peace officer, one count of attempted first degree murder, two counts of aggravated discharge of a firearm in the direction of a vehicle known to be occupied by a peace officer, one count of aggravated discharge of a firearm, and two counts of aggravated unlawful use of a weapon.

¶ 4 At trial, Chicago police officer Christopher Findysz testified that about 3:22 p.m. on April 16, 2008, he was on patrol in an unmarked police vehicle with his partner, Officer Sean Insley, in the vicinity of 65th Street and Cottage Grove Avenue. Officer Findysz explained that the police vehicle had municipal "M" license plates on the front and back and further

testified that it looked like a regular blue and white squad car except that it was gray and had no lights on top. Officer Findysz testified that he saw Sharp running west on 65th Street and that the officers followed him as he turned north and ran down an alley. As they did so, Officer Findysz heard multiple gunshots that sounded as though they had been fired from his north and a little to his east. Officer Findysz could not see where the shots came from because there were buildings to his east blocking his view. As the officers continued to follow Sharp down the alley, Officer Findysz saw defendant fire two shots at Sharp with a handgun from a vacant lot to the east of the alley and north of the buildings that had previously blocked his view. Officer Insley turned the vehicle and proceeded toward defendant, who looked at the officers and ran away. Shortly after he began to flee, defendant turned toward the officers and fired his handgun one time at them while they were about 25 or 30 feet away. Defendant continued to run away and dropped his gun on the ground next to a car, and Officer Findysz exited the vehicle and pursued defendant on foot until he apprehended him and placed him in custody. As he was being arrested, defendant told Officer Findysz that he had not meant to shoot at the officers.

¶ 5        Officer Insley testified that about 3:22 p.m. on April 16, 2008, he was following Sharp down an alley near 65th Street and Cottage Grove Avenue in an unmarked police vehicle with Officer Findysz when he heard gunshots coming from his north and east. Officer Insley could not see who fired the shots because his view was blocked by buildings to his east. The officers continued to follow Sharp, and Officer Insley observed defendant firing a handgun at Sharp from a vacant lot. Officer Insley turned the vehicle and began to follow defendant, who looked at the officers and fired his gun at them one time as he ran away. Defendant dropped his gun as he ran, and Officer Findysz exited the vehicle and pursued him on foot. When Officer Insley heard over the radio that defendant had been placed in custody, he returned to the location where defendant had dropped his gun, but could not find it. On cross-examination, Officer Insley stated that he later discovered a gun with a partially ejected magazine on a rooftop near Sharp's apartment, which was a little north of the vacant lot where the shooting had occurred.

¶ 6        Chicago police detective Neil Maas testified that he met with defendant on the evening of April 16, 2008, and presented him with a reverse lineup identification from which he identified Sharp as the man at whom he had fired his gun earlier that day. On cross-examination, Detective Maas stated that defendant told him that he was not shooting at the police and that he was firing his gun because he saw someone shooting at him. On redirect examination, Detective Maas testified that defendant also told him that he had fired several shots at Sharp in the alley, but did not think he had hit him, and that he did not see a handgun in Sharp's possession and nobody shot at him.

¶ 7        The State rested its case, and the defense moved for a directed finding. The trial court granted a directed finding of not guilty as to attempted first degree murder of a peace officer and attempted first degree murder, but denied defendant's motion as to all other counts. The defense then began its case-in-chief, and the parties stipulated that, if called, Chicago police officer Peter Larcher would testify that on April 16, 2008, he recovered a 9-millimeter Luger cartridge case from a vacant lot at 6444 South Cottage Grove Avenue and a Mack model

1950 semiautomatic pistol from a garage roof at that same address. The parties further stipulated that, if called, forensic scientist John Laskamp would testify that he examined the cartridge case and pistol recovered by Officer Larcher and concluded that the cartridge case had been fired from the pistol.

¶ 8        Defendant testified that he did not fire a weapon at the police on April 16, 2008, and that he fired a handgun from a vacant lot at 6444 South Cottage Grove Avenue that afternoon because he had heard some gunshots and felt he needed to protect himself. On cross-examination, defendant stated that he saw Sharp near 65th Street and Cottage Grove Avenue on the afternoon of April 16, 2008. Defendant had previously been in fights with Sharp's friends, and Sharp began running down 65th Street as he approached the area, then turned down an alley. Defendant stated that he ran to a nearby vacant lot to see which way Sharp was running, but later testified that he had started to chase Sharp because he wanted to fight him and that he was trying to cut him off by running through the vacant lot. While in the lot, defendant heard two or three gunshots and then fired his gun in the direction from which it sounded like the shots had been fired, which was in the same direction as Sharp.

¶ 9        Defendant also stated on cross-examination that he saw the vehicle following Sharp after he had fired his gun and explained that he had seen that type of car before and knew it belonged to police officers, but did not know that particular vehicle was a police car because he did not see the municipal license plates and he had seen taxicabs that were the same make, model, and color. Defendant explained that he had begun running away after he fired his gun and before he saw the police vehicle and that he did not turn around and fire the gun even though it was still loaded. Defendant also stated that he realized he was being chased by the police when one of the officers exited the vehicle and that he had already dropped his gun in the vacant lot by that point because he did not want the gun in his hand while he was running. Defendant explained that he did not know that the vehicle following Sharp was a police car based on its sound, but could tell that it had a big engine and figured whoever was driving it must be someone he did not want to see. Defendant further stated that he provided Detective Maas with a handwritten statement on April 17, 2008, and that although the statement reflected that he had said that he knew the vehicle was a police car because he recognized its sound, he did not remember saying that.

¶ 10        The trial court found defendant guilty of aggravated discharge of a firearm in the direction of Sharp and aggravated discharge of a firearm in the direction of a vehicle known to be occupied by a peace officer and merged both counts of aggravated unlawful use of a weapon into those convictions. In its finding of guilt, the trial court stated that it was finding defendant guilty of aggravated discharge of a firearm in the direction of Sharp because he had "basically admitted" to committing that crime in his testimony where he admitted firing a gun at Sharp. The court then addressed the two counts of aggravated discharge of a firearm in the direction of a vehicle known to be occupied by a peace officer and found that the State had proved beyond a reasonable doubt that defendant had fired his gun at the police car and that the only remaining issue was whether he knew it was a police vehicle when he did so.

¶ 11        On this issue, the court first stated that "we have the defendant's own testimony wherein

-4-

he on two occasions said that he was aware that the kind of vehicle that was at issue in this particular case is the kind of vehicle that the Chicago Police Department uses" and that such testimony helped prove that defendant knew the vehicle at which he fired his gun was a police car. The court also stated that defendant's testimony that he did not fire his gun at the vehicle was "completely unbelievable" and that defendant was "entirely lacking in credibility on that particular issue." The court then stated that it found Officer Findysz to be a credible witness, noted the testimony showing that defendant ran away from the police vehicle and was armed when he did so, and reasoned that defendant must have known the vehicle was a police car because he otherwise would have had no reason to run. The court also noted the evidence showing that defendant threw away his gun as he fled and reasoned that he must have known the vehicle was a police car because he would have wanted to maintain possession of his gun unless he had decided to throw it away so it would not be found by the police. The court concluded that the State had proved beyond a reasonable doubt that defendant knew the vehicle at which he had fired his gun was a police car where the evidence showed that he ran away from the car and threw away his loaded gun as he did so.

¶ 12                                    ANALYSIS

¶ 13                                   I. Fair Trial

¶ 14     On appeal, defendant first contends that he was denied his right to a trial by a fair and unbiased trier of fact because the trial court prejudged his guilt as to aggravated discharge of a firearm in the direction of a vehicle known to be occupied by peace a officer. In a criminal prosecution, the defendant has a constitutional right to a fair trial before an unbiased and open-minded trier of fact. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Taylor*, 357 Ill. App. 3d 642, 647 (2005). A fair trial requires not only the absence of actual bias, but also the absence of the probability of bias. *People v. Hawkins*, 181 Ill. 2d 41, 50 (1998). A defendant's fundamental right to a fair trial is violated where the trier of fact prejudges the evidence and renders its judgment prior to the conclusion of the trial. *People v. Heiman*, 286 Ill. App. 3d 102, 113 (1996). To establish a violation of the right to a fair trial before an unbiased trier of fact, a defendant must overcome a presumption of impartiality. *People v. Moffat*, 202 Ill. App. 3d 43, 56 (1990).

¶ 15     Defendant asserts that the trial court improperly prejudged his guilt by determining that he knew the vehicle at which he fired his gun was a police car before he testified. The State first responds that defendant has forfeited this claim because he did not object to the court's conduct at trial or raise the issue in a posttrial motion. To preserve an issue for appeal, a defendant must object at trial and raise the issue in a posttrial motion. *People v. Anderson*, 407 Ill. App. 3d 662, 676 (2011). Defendant maintains, however, that this court should review the issue under the plain-error doctrine.

¶ 16     The plain-error rule bypasses normal forfeiture principles and permits reviewing courts to consider unpreserved error in certain circumstances. *People v. Averett*, 237 Ill. 2d 1, 18 (2010). A reviewing court may consider unpreserved error under the plain-error doctrine

when the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The first step in conducting plain-error review is to determine whether error occurred at all. *People v. Walker*, 232 Ill. 2d 113, 124-25 (2009).

¶ 17    Defendant maintains that during its finding of guilt, the trial court twice indicated that it had determined that he knew the vehicle at which he fired his gun was a police car before he testified where it: (1) asked "[w]hat else did he do? What else tells me before he even testified that he knew it was a police car?" and (2) stated "[t]hat's where I am before he even testified, that's why I believed the State had proven ultimately–taking that into consideration–I can understand why the State was able to prove that he knew it was the police." We initially note that unlike the cases cited by defendant in his brief (*Heiman*, 286 Ill. App. 3d at 112-13; *People v. McDaniels*, 144 Ill. App. 3d 459, 463 (1986); *People v. Johnson*, 4 Ill. App. 3d 539, 541 (1972); *People v. Ojeda*, 110 Ill. App. 2d 480, 485 (1969)), where the trial courts expressed their prejudgment prior to the close of each trial, here the court's challenged comments were made following the conclusion of the trial and after all the evidence had been presented.

¶ 18    Allegations of judicial bias must be viewed in context and evaluated in terms of the specific events that took place. *People v. Jackson*, 205 Ill. 2d 247, 277 (2001). In its finding of guilt, the trial court stated that defendant was guilty of aggravated discharge of a firearm in the direction of Sharp where he had "basically admitted" to committing that crime in his testimony. The court then addressed the two counts of aggravated discharge of a firearm in the direction of a vehicle known to be occupied by a peace officer, found that the State had proved beyond a reasonable doubt that defendant had fired his gun at the police vehicle, and stated that the only remaining issue was whether he knew it was a police car when he did so. The court first stated that "defendant's own testimony wherein he on two occasions said that he was aware that the kind of vehicle that was at issue in this particular case is the kind of vehicle that the Chicago Police Department uses" helped prove that he knew it was a police car. The court also stated that defendant's testimony that he did not fire his gun at the police was "completely unbelievable" and that he was "entirely lacking in credibility on that particular issue." The court then noted the evidence showing that defendant ran away from the vehicle while he was armed and reasoned that he must have known the vehicle was a police car because he otherwise would have had no reason to run.

¶ 19    It was at this point that the court asked "[w]hat else did he do? What else tells me before he even testified that he knew it was a police car?" Thus, when the court made the challenged comment, it was doing so in the context of having already stated that defendant's own testimony helped prove that he knew the vehicle was a police car. Viewed in this context, the challenged comment does not show that the court prejudged defendant's guilt, but that it was asking a rhetorical question regarding the quantum of the evidence presented prior to defendant's testimony that also showed that he knew the vehicle was a police car.

¶ 20    The court proceeded in its finding of guilt by noting the evidence showing that defendant threw his gun away as he fled and reasoning that he must have known the vehicle was a police car because he would have wanted to maintain possession of his gun unless he decided to throw it away so it would not be found by the police. It was at this point that the court commented "[t]hat's where I am before he even testified, that's why I believed the State had proven ultimately–taking that into consideration–I can understand why the State was able to prove that he knew it was the police." Viewed in context, these challenged comments amount to the completion of the court's summary of the evidence that was presented prior to defendant's testimony and supported a finding that he knew the vehicle at which he fired his gun was a police car and its conclusion that the entirety of the evidence showed that the State had "ultimately" proved that fact.

¶ 21    Thus, defendant has not overcome the presumption of impartiality accorded to the trial court where the evidence in the record shows that it did not prejudge his guilt or find that he knew the vehicle at which he fired his gun was a police car prior to his testimony, and we therefore conclude that he was not denied his right to a fair trial by an unbiased trier of fact. As such, there is no error by the trial court to rise to the level of plain error to excuse defendant's procedural default of this issue in this case.

¶ 22                              II. One Act, One Crime

¶ 23    Defendant next contends that one of his convictions for aggravated discharge of a firearm in the direction of a vehicle known to be occupied by a peace officer must be vacated pursuant to the one-act, one-crime doctrine. The State first responds that defendant has forfeited this claim because he failed to object at trial or raise it in a posttrial motion. Although defendant did not object at trial or raise this issue in a posttrial motion, we may nonetheless review his claim under the second prong of the plain-error doctrine because the potential for an unwarranted conviction and sentence threatens the integrity of the judicial process. *People v. Carter*, 213 Ill. 2d 295, 299 (2004). However, the first step in conducting plain-error review is to determine whether error occurred at all. *Walker*, 232 Ill. 2d at 124-25.

¶ 24    The one-act, one-crime doctrine provides that a defendant may not be convicted of multiple crimes if they are based on precisely the same physical act. *People v. Miller*, 238 Ill. 2d 161, 165 (2010). In this context, "act" means "any overt or outward manifestation which will support a different offense." *People v. King*, 66 Ill. 2d 551, 566 (1977).

¶ 25    Defendant asserts that even though the vehicle at which he fired his gun was occupied by two officers, he may only be convicted of one crime because his convictions were for shooting at the vehicle itself, and not the officers located inside, and he fired one shot at one police vehicle. The State maintains that both defendant's convictions should be upheld even though they arise from the same single act because both officers were victims of the crime where they were both occupants of the vehicle at which defendant fired his gun and the criminal statute at issue was designed to protect them, and not the vehicle.

¶ 26    A court's primary objective in construing the meaning of a statute is to ascertain and give

effect to the intent of the legislature. *People v. Williams*, 239 Ill. 2d 503, 506 (2011). In doing so, the language of the statute must be given its plain and ordinary meaning, and a court will have no occasion to resort to aids of construction where the statutory language is unambiguous and clear. *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). Defendant was charged and convicted under section 24-1.2(a)(4) of the Criminal Code of 1961 (Code) (720 ILCS 5/24-1.2(a)(4) (West 2008)), which provides that a person is guilty of aggravated discharge of a firearm in the direction of a vehicle known to be occupied by a peace officer if he or she "[d]ischarges a firearm *in the direction of a vehicle* he or she knows to be occupied by a peace officer." (Emphasis added.) Thus, under the plain language of subsection (a)(4), the State is required prove that the defendant discharged a firearm in the direction of a vehicle, that the vehicle was occupied by a peace officer, and that the defendant knew the vehicle was occupied by a peace officer. In this case, the evidence presented at trial showed that defendant fired one gunshot at one vehicle occupied by a peace officer. As such, defendant may only be convicted of one crime under the statute's plain language.

¶ 27    In addition, this court must view the statute as a whole and construe words and phrases in light of other relevant statutory provisions. *People v. Gutman*, 2011 IL 110338, ¶ 12. Section 24-1.2(a)(3) of the Code provides that a person is guilty of aggravated discharge of a firearm in the direction of a peace officer if he or she "[d]ischarges a firearm *in the direction of a person* he or she knows to be a peace officer." (Emphasis added.) 720 ILCS 5/24-1.2(a)(3) (West 2008). In contrast, subsection (a)(4) defines the criminal act as the discharge of a firearm "in the direction of a vehicle" known to be occupied by a peace officer. 720 ILCS 5/24-1.2(a)(4) (West 2008). Thus, when subsections (a)(3) and (a)(4) are considered together, the statutory language shows that the legislature intended to prohibit the act of discharging a weapon in the direction of a peace officer in subsection (a)(3) and prohibit the separate act of discharging a weapon in the direction of a vehicle known to be occupied by a peace officer in subsection (a)(4). As such, the State's assertion that the crime set forth in subsection (a)(4) is the discharge of a firearm in the direction of the occupants of the vehicle, rather than the vehicle itself, is contradicted by the language of subsection (a)(4) by itself and when considered in light of subsection (a)(3).

¶ 28    This conclusion is further supported by the statutory language in subsection (a)(2), which provides that a person commits aggravated discharge of a firearm when he or she knowingly or intentionally "[d]ischarges a firearm in the direction of another person or in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person." 720 ILCS 5/24-1.2(a)(2) (West 2008). If the legislature had intended to prohibit the discharge of a firearm at the officers in subsection (a)(4), it could have used the same language as in subsection (a)(2) and provided that the criminal act was the discharge of a firearm in the direction of a peace officer or a vehicle known to be occupied by a peace officer. Instead, the legislature chose to make the discharge of a firearm in the direction of a peace officer a separate offense from the discharge of a firearm in the direction of a vehicle known to be occupied by a peace officer and prohibited such conduct under the separate subsections of (a)(3) and (a)(4).

¶ 29    Also, each word, clause, and sentence of a statute must, if possible, be given meaning and

not rendered superfluous. *People v. Botruff*, 212 Ill. 2d 166, 175 (2004). If this court were to interpret subsection (a)(4) as criminalizing the discharge of a firearm in the direction of a peace officer, we would render that subsection superfluous and without meaning because any criminal act under subsection (a)(4) would also be a criminal act under subsection (a)(3) and would carry the same punishment (720 ILCS 5/24-1.2(b) (West 2008) (a violation of subsection (a)(3) or (a)(4) "is a class X felony for which the sentence shall be a term of imprisonment of no less than 10 years and not more than 45 years")). Thus, subsection (a)(4) must be interpreted to prohibit the act of discharging a firearm in the direction of the vehicle, and not the officer, to ensure that it has meaning and is not superfluous.

¶ 30       Further, the exception to the one-act, one-crime doctrine for multiple convictions arising from a single physical act where the act was committed against separate victims does not apply in this case. In *People v. Pryor*, 372 Ill. App. 3d 422 (2007), this court upheld the defendant's convictions for vehicular hijacking and aggravated vehicular hijacking even though they arose from the same single act of stealing one car. In *Pryor*, we rejected the defendant's argument that multiple convictions were precluded by the plain language of the relevant statutes because the statutes defined the crime as being committed against an individual where vehicular hijacking was defined as the taking of a motor vehicle " 'from *the person or immediate presence of another* by the use of force' " (emphasis in original) or threat thereof. *Id.* at 435 (quoting 720 ILCS 5/18-3(a) (West 2002)). We then concluded that the defendant committed two separate criminal acts because there were two separate victims where two people were threatened by the defendant and subjected to the taking of the car by force. *Id.* at 434-35. Thus, under *Pryor*, a defendant's single physical act will constitute two criminal acts where the criminal act is statutorily defined as being directed at a person and the defendant's physical act is directed at multiple people.

¶ 31       In this case, defendant was convicted of discharging a firearm in the direction of a vehicle known to be occupied by a peace officer under section 24-1.2(a)(4) of the Code, which defines the criminal act as the discharge of a firearm "in the direction of a vehicle" that is occupied by a peace officer. 720 ILCS 5/24-1.2(a)(4) (West 2008). Thus, in *Pryor* the relevant statutes defined the criminal act as being directed against a person and here the criminal act is statutorily defined as being directed against the vehicle. As such, *Pryor* is distinguishable because the statute in this case defines the criminal act as being directed at the vehicle and the vehicular hijacking statutes at issue in *Pryor* defined the criminal act as being directed at the individuals from which the car is taken.

¶ 32       The cases cited by the State in support of its assertion that two convictions are proper in this case because there were two victims are also distinguishable because the court held in each case that multiple convictions could arise from a defendant's single act where the criminal act was statutorily defined as being directed at a person and the single act was directed at multiple people. In *People v. Leach*, 2011 IL App (1st) 090339, ¶ 33, this court held that the defendant could be convicted of both second degree murder and aggravated discharge of a firearm in the direction of a person even if the defendant's act of firing his gun three times constituted a single act because he fired his gun at two people. However, as in *Pryor*, the statutes at issue in *Leach* defined the criminal act as being directed at a person

(720 ILCS 5/9-2 (West 2008) (a person commits second degree murder where he or she *kills an individual* and the requisite mitigating factors are present); 720 ILCS 5/24-1.2(a)(2) (West 2008) (as noted above, a person is guilty of aggravated discharge of a firearm in the direction of a person where he or she discharges a firearm "in the direction of another person or in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person")).

¶ 33    In *People v. Butler*, 64 Ill. 2d 485, 489 (1976), our supreme court upheld two convictions of armed robbery where the defendant threatened the use of force against two people and acted in concert with the codefendant during the robbery. However, the statute defined the criminal act as being directed against the person where it provided that " '[a] person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force.' " *Id.* (quoting Ill. Rev. Stat. 1971, ch. 38, ¶ 18-1(a)). In *People v. Lark*, 127 Ill. App. 3d 927, 936 (1984), this court relied on *Butler* in determining that "the crime of robbery was personal to the victim" and upholding the defendant's three convictions for armed robbery for robbing three people.

¶ 34    In *People v. Lee*, 376 Ill. App. 3d 951, 957-58 (2007), this court upheld the defendant's convictions for aggravated unlawful restraint where he detained two people and the criminal act was statutorily defined as being directed against the person, where the statute provided that the crime was committed when a person "knowingly without legal authority *detains another* while using a deadly weapon" (emphasis added) (720 ILCS 5/10-3.1 (West 2000)). In *People v. Ruiz*, 342 Ill. App. 3d 750, 758-60 (2003), this court upheld the defendant's convictions for first degree murder and aggravated discharge of a firearm in the direction of a person because he fired his gun at two people and both statutes defined the criminal act as being directed against a person (720 ILCS 5/9-1(a) (West 1998) (a person is guilty of first degree murder if he or she "kills an individual" without legal justification); 720 ILCS 5/24-1.2(a)(2) (West 1998) (a person is guilty of aggravated discharge of a firearm in the direction of a person where he discharges a firearm "in the direction of another person or in the direction of a vehicle he knows to be occupied")).

¶ 35    Further, although the officers may be considered to be "victims" in a colloquial sense because their presence in the vehicle was a necessary condition of the crime and the statute was designed to protect them, the one-act, one-crime doctrine nonetheless applies because they were not the subject of the criminal act where it was directed at the vehicle. For example, a defendant may be convicted of only one crime of theft where he has committed a single act of theft even if multiple people could be considered to be "victims" because they all owned the stolen property. *People v. Vaini*, 33 Ill. App. 3d 246, 248 (1975) (citing *People v. Israel*, 269 Ill. 284 (1915)). Similarly, while the officers could be considered to be "victims" in this case because they both occupied the vehicle at which defendant fired his gun, defendant may only be convicted of one crime because he committed a single criminal act where he fired one shot at one vehicle.

¶ 36    Moreover, the rule of lenity requires that any ambiguity in a criminal statute must be resolved in that manner which favors the accused, but must not be used to defeat the

legislature's intent. *People v. Jones*, 223 Ill. 2d 569, 581 (2006). Thus, to the extent there is any ambiguity as to whether subsection (a)(4) prohibits the discharge of a firearm in the direction of the vehicle or the officers, such ambiguity must be resolved in favor of defendant.

¶ 37 We therefore determine that subsection (a)(4) prohibits the discharge of a firearm in the direction of the vehicle occupied by a peace officer, rather than the officer, where such an interpretation is consistent with the plain language of subsection (a)(4), the rules of statutory construction, and the relevant case law. The State has not cited, nor has this court found, any legislative history to support the assertion that the legislature intended to prohibit the discharge of a firearm in the direction of a peace officer when it drafted subsection (a)(4) to define the criminal act as the discharge of a firearm "in the direction of a vehicle" known to be occupied by a peace officer. 720 ILCS 5/24-1.2(a)(4) (West 2008). The State could have charged defendant under subsection (a)(3), which prohibits the discharge of a firearm "in the direction of a person" known to be a peace officer (720 ILCS 5/24-1.2(a)(3) (West 2008)), but did not do so. If defendant had been charged under subsection (a)(3) and the State had met its burden of proof, then defendant could have been convicted of two crimes because his criminal act would have been directed at two people. However, defendant was charged and convicted under subsection (a)(4), which defines the criminal act as the discharge of a firearm at a vehicle. As such, we determine that defendant has committed one criminal act under subsection (a)(4) where he fired his gun one time at one vehicle and conclude that he may therefore be convicted of only one crime.

¶ 38                                        CONCLUSION

¶ 39 Accordingly, we vacate one of defendant's convictions for aggravated discharge of a firearm in the direction of a vehicle known to be occupied by a peace officer and affirm the judgment of the circuit court of Cook County in all other respects.

¶ 40 Affirmed in part and vacated in part.

¶ 41 JUSTICE SALONE, concurring in part and dissenting in part.

¶ 42 I respectfully dissent from the majority's conclusion that one of defendant's convictions for aggravated discharge of a firearm in the direction of a vehicle known to be occupied by a peace officer must be vacated pursuant to the one-act, one-crime doctrine. I would uphold both convictions, even though they arise from the same act, because both officers were victims of the crime.

¶ 43 In construing the meaning of the statute to give effect to the intent of the legislature, the majority has determined that because the prohibited act under section (a)(4) is the discharge of a firearm "in the direction of a vehicle," it is irrelevant how many potential victims are

contained within the vehicle. 720 ILCS 5/24-1.2(a)(4) (West 2008). I find the majority's conclusion to be incorrect, particularly because it is clear to me the intent of the statute is to protect the peace officers, not their vehicle. The prohibited act is the discharge of "a firearm in the direction of a vehicle he or she knows to be *occupied by a peace officer*." (Emphasis added.) 720 ILCS 5/24-1.2(a)(4) (West 2008). The later half of the phrase is the most important.

¶ 44     The majority has, in essence, made the focus of the statute the vehicle, rather than the peace officers. The majority holds the peace officers here were "not the subject of the criminal act where it was directed at the vehicle." *Supra* ¶ 35. Consistent with the majority's interpretation, had defendant shot at two different vehicles, he would have been properly convicted of two counts under section (a)(4) because the vehicles are the subject of the criminal act. It is clear to me that the legislature did not intend to afford greater protection to two peace officers driving in separate vehicles over two officers driving in the same vehicle, as the majority's interpretation suggests.

¶ 45     The statute is poorly written. It is clear the legislature intended the statute to protect the officers inside the vehicle, not the vehicle itself. Had the statute been intended to protect the vehicle, a monetary penalty should have been assessed for violations. Both officers were victims of defendant's discharge of a firearm in the direction of their vehicle. See *People v. Pryor*, 372 Ill. App. 3d 422, 437 (2007) (citing *People v. Butler*, 64 Ill. 2d 485, 489 (1976)); *People v. Gard*, 236 Ill. App. 3d 1001, 1013-14 (1992) (where a single act injures multiple victims, the consequences affect, separately, each person injured). Both officers were equally at risk of serious injury or death from defendant's actions. To hold otherwise completely undermines the purpose of the statute, to protect peace officers.

¶ 46     My position is consistent with the one taken by the majority here in *People v. Pryor*, 372 Ill. App. 3d 422, and the cases cited by the State in support of its position that two convictions are proper here. Although the majority finds the present facts distinguishable, holding the criminal act here is "statutorily defined as being directed against the vehicle" (*supra* ¶ 31), not against a person as the relevant statute in *Pryor* and the State's supporting case law was, I disagree. Defendant committed two crimes because the criminal act is the discharge of the firearm at the occupants of the vehicle, not the vehicle itself.

¶ 47     Just as in *Pryor*, here, there are two victims. Both peace officers were threatened by defendant's action. Each victim was subjected to possible injury or death from the bullet. As discussed above, the statute at issue here is to protect peace officers, not their vehicle, and, therefore, although poorly written, it must be interpreted to define the criminal act as against the peace officer. Because there are two separate victims, there are two separate acts and, therefore, separate convictions were proper.

¶ 48     For the reasons above, I would affirm defendant's two convictions for aggravated discharge of a firearm in the direction of a vehicle known to be occupied by a peace officer.