# Illinois Official Reports

## Appellate Court

---

### *People v. Avelar*, 2017 IL App (4th) 150442

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LUIS H. AVELAR, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-15-0442 |
| Filed | July 12, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Vermilion County, No. 14-CM-118; the Hon. Mark S. Goodwin, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Akshay Mathew, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Jacqueline M. Lacy, State's Attorney, of Danville (Patrick Delfino, David J. Robinson, and Luke McNeill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices Harris and Appleton concurred in the judgment and opinion. |

**OPINION**

¶ 1        In January 2015, the State charged defendant, Luis H. Avelar, with three counts of violation of an order of protection. The order of protection at issue prohibited defendant from being within 200 feet of his ex-girlfriend, L.H., and their children, E.A., P.A., and O.A. At the March 2015 jury trial, the evidence showed that defendant picked up two of his children from L.H.'s home in Watseka and took them to Hoopeston, where defendant lived. Defendant then called L.H. and told her that he and the children were at the McDonald's in Hoopeston. When L.H. went to McDonald's to pick up the kids, she and defendant argued. Police later arrested defendant for violating the order of protection. The jury found defendant guilty of all three counts of violating the order of protection. The trial court later sentenced defendant to two years' probation.

¶ 2        On appeal, defendant argues that two of his convictions for violation of an order of protection must be vacated because they violate the one-act, one-crime doctrine. We disagree and affirm.

¶ 3                                        I. BACKGROUND

¶ 4        Because the parties do not dispute the facts of this case, we provide only the factual background necessary to place defendant's claim in context.

¶ 5        In August 2013, the trial court entered a plenary order of protection against defendant. The petitioner was L.H.—defendant's ex-girlfriend and the mother of three of his children. The petition sought to protect L.H. and L.H.'s daughter—S.M.—along with the children of defendant and L.H.—E.A., P.A., and O.A. The order of protection required, among other things, that defendant stay 200 feet from (1) L.H., (2) S.M., (3) E.A., (4) P.A., and (5) O.A. The order was effective until August 2015.

¶ 6        In February 2014, the State filed an information against defendant, which the State amended in January 2015. The amended information charged defendant with three counts of violating an order of protection (720 ILCS 5/12-3.4(a)(1)(i) (West 2014)), alleging that defendant "had contact" with L.H., E.A., and P.A., respectively.

¶ 7        At the March 2015 jury trial, the evidence showed that on February 16, 2014, defendant picked up E.A. and P.A. from their home in Watseka, where they lived with L.H., and took them to Hoopeston, where defendant lived. Defendant later called L.H., told her he was with the children, and asked her to meet him at the McDonald's in Hoopeston so L.H. could take the children back to her home. L.H. met defendant and the children at McDonald's, where an argument began. Police were called, and defendant was arrested for violating the order of protection. During closing argument, the State argued that defendant had violated the order of protection three times, in that "defendant was there at the *** McDonald's *** in Hoopeston. *** [H]e came and got the kids and drove 'em, drove 'em there."

¶ 8        The jury found defendant guilty of all three counts of violating an order of protection. The trial court sentenced him to two years' probation.

¶ 9        This appeal followed.

## II. ANALYSIS

Defendant argues that we should vacate two of his convictions for violating an order of protection because they violate the one-act, one-crime doctrine. For the reasons that follow, we disagree and affirm.

### A. Plain Error

Defendant concedes that he forfeited his argument by failing to raise it in the trial court. The parties agree that a forfeited one-act, one-crime claim is reviewable under the second prong of the plain-error doctrine, as a clear or obvious error "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *People v. Artis*, 232 Ill. 2d 156, 165, 902 N.E.2d 677, 683 (2009). In this case, we choose to determine first whether a one-act, one-crime violation occurred at all. See *People v. Vesey*, 2011 IL App (3d) 090570, ¶ 21, 957 N.E.2d 1253 (explaining that although courts generally determine, as the first step of a plain-error analysis, whether error occurred at all, courts are not bound to conduct the analysis in that sequence).

### B. Statutory Language

When analyzing whether a one-act, one-crime violation occurred, a court should first answer the prerequisite question of whether the statutory language in question permitted multiple convictions in the manner alleged and proved by the State. See *People v. Almond*, 2015 IL 113817, ¶ 33, 32 N.E.3d 535 ("We must first determine whether the [unlawful use of a weapon (UUW)] by a felon statute authorizes separate offenses to be charged for the simultaneous possession of a firearm and ammunition ***.").

The defendant in *Almond* argued that his multiple weapons convictions—(1) armed habitual criminal for possession of a firearm and (2) UUW by a felon for possession of ammunition inside that firearm (720 ILCS 5/24-1.1(e) (West 2008))—violated the one-act, one-crime doctrine. *Almond*, 2015 IL 113817, ¶ 32, 32 N.E.3d 535. As the court explained, " 'one-act, one-crime principles apply only if the statute is construed as permitting multiple convictions for simultaneous possession.' " *Id.* ¶ 33 (quoting *People v. Carter*, 213 Ill. 2d 295, 301, 821 N.E.2d 233, 237 (2004)). The UUW by a felon statute provided that "[t]he possession of each firearm or firearm ammunition in violation of this Section constitutes a single and separate violation." 720 ILCS 5/24-1.1(e) (West 2008). Relying on that language, the *Almond* court held that the UUW by a felon statute "authorizes separate convictions for the simultaneous possession of a firearm and ammunition in a single loaded firearm." *Almond*, 2015 IL 113817, ¶ 43, 32 N.E.3d 535. The court then went on to determine that the multiple convictions were supported by separate acts and, therefore, no one-act, one-crime violation occurred. *Id.* ¶ 50.

In *Village of Sugar Grove v. Rich*, 347 Ill. App. 3d 689, 808 N.E.2d 525 (2004), the Second District engaged in a similar process of statutory interpretation, despite describing that process somewhat differently than did the supreme court in *Almond*. In *Rich*, the defendant was charged with multiple violations of Sugar Grove's noise ordinance (Sugar Grove Village Code § 4-5-1 (1998)). *Rich*, 347 Ill. App. 3d at 691, 808 N.E.2d at 528. The noise ordinance prohibited excessive noise that annoyed or disturbed "others within the limits of the Village." Sugar Grove Village Code § 4-5-1 (1998). The ordinance provided further that "[e]ach day such violation is committed or permitted to continue shall constitute a separate offense and

shall be punishable as such under this Chapter" (Sugar Grove Village Code § 4-5-4 (1998)). The charges levied against the defendant included multiple violations of the noise ordinance based on separate victims who were annoyed by noise that was created on the same day. *Rich*, 347 Ill. App. 3d at 692, 808 N.E.2d at 528. For instance, "[t]he defendant was convicted of violating the ordinance on June 15, 2002, at 8:39 p.m., 9 p.m., 10:10 p.m., and 10:16 p.m." *Id.* at 698, 808 N.E.2d at 533.

¶ 18    The *Rich* court held that the language of the noise ordinance prohibited multiple violations for intermittent noise created on the same day. *Id.* As the ordinance provided, "[e]ach day such a violation is committed or permitted to continue shall constitute a separate offense." Sugar Grove Village Code § 4-5-4 (1998). Therefore, the court determined that noise made on the same day could support only one conviction under the noise ordinance. The *Rich* court further held that the ordinance's prohibition of excessive noise that disturbs "others within the limits of the Village" (Suger Grove Village Code § 4-5-1 (1998)) meant that a single violation of the noise ordinance contemplates multiple victims and that the ordinance therefore does not support multiple convictions for multiple victims. *Rich*, 347 Ill. App. 3d at 698-99, 808 N.E.2d at 533-34.

¶ 19    The *Rich* court described its holding in terms of the one-act, one-crime doctrine, holding that "[b]y the terms of the Village's ordinance, the defendant's convictions were based on the same physical act." *Id.* at 698, 808 N.E.2d at 533. However, in light of the supreme court's subsequent analysis in *Almond*, we find it more accurate to read *Rich* as holding that the ordinance in question prohibited the State from charging multiple violations as it did and as avoiding the question of whether the multiple convictions were based on "an act" in violation of the one-act, one-crime doctrine.

¶ 20    In this case, defendant was charged with multiple counts of violation of an order of protection (720 ILCS 5/12-3.4(a)(1)(i) (West 2014)). The statute provides that a person commits a violation of an order of protection when "[h]e or she knowingly commits an act which was prohibited by a court *** in violation of" "a valid order of protection." *Id.* Unlike in *Almond* and *Rich*, this statute contains no explicit language about whether multiple, simultaneous violations of a single order of protection may be charged as multiple offenses or, instead, must be charged as a single offense. Instead, the statute merely contemplates that an offense occurs when a defendant commits "an act" that was in violation of a valid order of protection. *Id.* We therefore hold that the language of the statute does not prohibit the State from charging separate offenses for multiple, simultaneous violations of the same order of protection. As a result, we proceed to analyze defendant's claim under one-act, one-crime principles.

¶ 21                              C. One-Act, One-Crime

¶ 22    Under the one-act, one-crime doctrine, "a defendant may not be convicted of multiple offenses based on the same physical act." *Almond*, 2015 IL 113817, ¶ 47, 32 N.E.3d 535. Our supreme court "has noted that the one-act, one-crime rule has never been viewed as a rule of constitutional dimension." *Artis*, 232 Ill. 2d at 164, 902 N.E.2d at 683; but see *People v. Gray*, 214 Ill. 2d 1, 6, 823 N.E.2d 555, 558 (2005) (holding that double jeopardy principles of the federal and Illinois constitutions bar, among other things, imposing "more than one punishment for the same offense"). An "act" is defined as "any overt or outward manifestation

- 4 -

that will support a separate offense." *People v. Crespo*, 203 Ill. 2d 335, 341, 788 N.E.2d 1117, 1120 (2001).

¶ 23   The long-established test for determining whether a one-act, one-crime violation has occurred involves a two-step process. First, the court should determine whether the defendant's conduct consists of one physical act or several acts. *People v. Rodriguez*, 169 Ill. 2d 183, 186, 661 N.E.2d 305, 306 (1996). If the defendant has committed only one physical act, "[m]ultiple convictions are improper." *Id.*

¶ 24   If, on the other hand, the defendant has committed multiple acts, the court should then determine whether any of the charged offenses are lesser included offenses of another charged offense. If so, then "multiple convictions are improper; if not, then multiple convictions may be entered." *Id.* at 186, 661 N.E.2d at 306-07. If a court determines that multiple convictions are improper, the court should vacate the less serious offense or offenses. *In re Samantha V.*, 234 Ill. 2d 359, 379, 917 N.E.2d 487, 500 (2009).

¶ 25   "[T]he one-act, one-crime rule only applies to multiple convictions for acts against a single victim." *People v. Leach*, 2011 IL App (1st) 090339, ¶ 30, 952 N.E.2d 647. "Multiple convictions are proper when there are multiple victims." *Id.*; see also *People v. Shum*, 117 Ill. 2d 317, 363, 512 N.E.2d 1183, 1201 (1987) ("[S]eparate victims require separate convictions and sentences.").

¶ 26   In this case, even if we construe defendant's alleged behavior as a single act, no one-act, one-crime violation exists because the State charged defendant with three counts of violation an order of protection against three different victims: L.H., E.A., and P.A. All three were protected persons under the order of protection, and defendant violated the order of protection as to all three. Because this case involves three separate victims, we need not determine whether defendant's activity as charged in this case constituted a single act or multiple acts.

¶ 27   Defendant attempts to distinguish the offense of violation of an order of protection as an offense against the court, arguing that the offense has no "victims" and therefore cannot support the exception to the one-act, one-crime rule for multiple victims. We disagree.

¶ 28   In support of his argument that the offense of violation of an order of protection has no "victim," defendant cites *People v. Hardin*, 2012 IL App (1st) 100682, 976 N.E.2d 1083. In *Hardin*, the defendant was convicted of two counts of aggravated discharge of a firearm under section 24-1.2(a)(4) of the Criminal Code of 1961 (Code) (720 ILCS 5/24-1.2(a)(4) (West 2008)), which made it a crime to discharge a firearm in the direction of a vehicle known to be occupied by a peace officer. Defendant argued that the one-act, one-crime doctrine prohibited him from receiving two convictions under that subsection when he discharged a firearm toward a vehicle only once, despite the fact that the vehicle was occupied by two peace officers. *Hardin*, 2012 IL App (1st) 100682, ¶¶ 23-25, 976 N.E.2d 1083.

¶ 29   The First District agreed with the defendant and vacated one of his convictions. *Id.* ¶ 39. In reaching that decision, the court rejected the State's argument that defendant was appropriately convicted of two counts because he fired at a vehicle containing two peace officers. *Id.* ¶ 27. The court distinguished section 24-1.2(a)(4) of the Code from section 24-1.2(a)(3) of the Code, which prohibited discharging a firearm " '*in the direction of a person* he or she knows to be a peace officer.' " (Emphasis in original.) *Hardin*, 2012 IL App (1st) 100682, ¶¶ 26-27, 976 N.E.2d 1083 (quoting 720 ILCS 5/24-1.2(a)(3) (West 2008)). The court reasoned that the defendant was convicted of an offense "directed against the vehicle," not against the officers.

*Id.* ¶ 31. As a result, the existence of multiple officers in the vehicle did not mean there were multiple victims that could support multiple convictions.

¶ 30    In this case, the offense of violation of an order of protection proscribed committing "an act which was prohibited by a court *** in violation of" "a valid order of protection." 720 ILCS 5/12-3.4(a)(1)(i) (West 2014). Defendant committed an act that violated the order of protection in three ways, as to three separate victims. The language of the statute contains no language suggesting that the legislature intended to prohibit multiple convictions based on multiple victims, in contrast to the statutory language at issue in *Rich* and *Hardin*. Therefore, because defendant violated the protective order as to three separate people, his three convictions are not prohibited by the one-act, one-crime doctrine. As a result, we affirm defendant's convictions.

¶ 31                                III. CONCLUSION

¶ 32    For the foregoing reasons, we affirm the trial court's judgment.

¶ 33    As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002 (West 2016).

¶ 34    Affirmed.