2020 IL App (3d) 170848

Opinion filed December 31, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Henry County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0848 Circuit Nos. 16-CF-411 & 16-CF-412 |
| | ) | |
| TRAVIS J. WILLIAMS, | ) ) | Honorable Jeffrey W. O'Connor, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justices McDade concurred in the judgment and opinion.
Justice Schmidt dissented, with opinion.

**OPINION**

¶ 1     The defendant, Travis J. Williams, appealed his convictions of predatory criminal sexual

assault of a child and criminal sexual assault.

¶ 2                                    FACTS

¶ 3     The defendant, Travis Williams, was charged on November 30, 2016, with 10 counts of

predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2004)) and five

counts of criminal sexual assault (*id.* § 12-13(a)(3)) in case No. 16-CF-411, the victim being his

biological daughter, K.W. The allegations with respect to K.W. occurred between January 1, 2004,

and January 30, 2005. Prior to trial, the State indicated that it would only proceed to trial on two of each count and dismiss the remaining counts. The defendant was also charged with five counts of predatory criminal sexual assault of a child, five counts of criminal sexual assault, and two counts of aggravated criminal sexual abuse (*id.* § 12-16(b)) in case No. 16-CF-412, the victim being his stepdaughter, H.S. The allegations with respect to H.S. occurred between January 1, 2007, and March 30, 2009. The State proceeded to trial in case No. 16-CF-412 on one count of predatory criminal sexual assault and one count of criminal sexual assault and dismissed the remaining counts.

¶ 4        Prior to trial, the State filed a motion to admit evidence of other sex crimes pursuant to section 115-7.3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.3 (West 2016)). The State sought to introduce the testimony of K.W. at H.S.'s trial, and *vice versa*, along with allegations by two other minors to prove the defendant's intent and absence of mistake, as well as to show the defendant's propensity to commit sex offenses. After the trial court granted the motion, defense counsel agreed to the joinder of the two cases. The State also filed a motion *in limine* pursuant to section 115-7 of the Code (725 ILCS 5/115-7 (West 2016)) to prevent the defendant from introducing evidence of the victims' prior sexual conduct. The defense indicated that it would not be eliciting any such testimony, so the trial court indicated on the record that the matter was resolved.

¶ 5        The State presented three witnesses at the combined trial: K.W., H.S., and Johanna Hager, an expert witness in forensic interviewing and clinical psychology. K.W. testified that she was born on January 31, 1992, and the defendant was her father. K.W. testified that in June 2016 she had spent the day with the defendant's youngest daughter, O.A., and K.W. felt compelled to warn O.A.'s mother, Patti A., that the defendant had touched K.W. when she was younger. K.W. defined

her relationship with the defendant as "good" and that he has "been like [her] best friend." She went on to testify that when she was in sixth grade, the 2003-04 school year, K.W. and her younger sister, A.R., had a bedroom at the defendant's home but, after the defendant's girlfriend moved out, K.W. and A.R. began sleeping in the defendant's bedroom on a mattress on the floor. The defendant started having K.W. remove her shirt to give her backrubs and then later started to rub her front, too. K.W. could not recall if A.R. was ever awake or said anything at the time. K.W. recalled, while she was still in sixth grade, that the defendant took her hand and rubbed it across his stomach, purposely having her touch his penis. K.W. faked that she was sleeping. The defendant then started touching K.W. in the vaginal area and then had sexual relations with her. K.W. and the defendant did not talk about it at the time, but about a month later they did discuss it, and the defendant told K.W. that it was his way of teaching K.W. and showing love. K.W. testified that sex with the defendant happened routinely, until K.W. texted the defendant when she was 17 or 18 years old and said she did not want to do it anymore. K.W. testified that there were times when she thought her period was late and she would tell the defendant "[b]ecause [she] wasn't having sex with anyone else." K.W. remembered punching herself in the stomach, thinking that it would somehow make her not pregnant. K.W. also testified that the defendant would have her engage in oral sex.

¶ 6 At some point in 2009 or before, K.W. testified that she talked about the abuse with A.R. According to K.W., A.R. said something happened to A.W., but A.W. would not talk about it. In 2009, A.R. made allegations against the defendant, and the police and the Department of Children and Family Services (DCFS) investigated. K.W. was interviewed as part of the investigation and reported that nothing happened with the defendant. K.W. testified that she did so at the time

because she felt that A.R. should not have reported the abuse against K.W. and because K.W. felt a need to protect the defendant.

¶ 7    H.S. testified that she was born on August 4, 1996, and the defendant was her former stepfather. The defendant was married to H.S.'s mother from about H.S.'s sixth-grade year to her sophomore year in high school, and H.S. lived in the home with the defendant during that time. H.S. was contacted by the police in June or July 2016, after receiving a call from her mother, Patti, asking if H.S. had ever been touched by the defendant. H.S. responded that she had. H.S. testified that she had lived with the defendant for about a year before the defendant began giving her backrubs and requesting backrubs. H.S. was uncomfortable when the defendant asked her to use lotion while giving the defendant a backrub. At first, it was just backrubs, but then the defendant made H.S. touch his penis and help him masturbate. The defendant then started touching H.S.'s vagina with his hand. When the DCFS investigator talked to H.S. in 2009, H.S. denied any touching by the defendant. H.S. testified that she denied the abuse in 2009 because the defendant had told H.S. that, if she told, the defendant would get in trouble and H.S.'s mother would be unhappy and lonely.

¶ 8    Johanna Hager testified that she was a forensic interviewer at the Braveheart Children's Advocacy Center. Hager testified that she did not interview K.W. or H.S. She testified generally that delayed disclosure of sexual abuse was common. Concern for a younger sibling is an external event that can cause a victim to speak up. And it was not uncommon for children to love their abuser.

¶ 9    During closing arguments, the State argued that the defendant was guilty but informed the jury that it was its job to judge the credibility of the witnesses. Both the State and defense counsel informed the jury that the State had the burden of proof and that the burden was proof beyond a

4

reasonable doubt. Defense counsel argued that K.W.'s and H.S.'s testimony was uncorroborated and there was no physical evidence. To explain what uncorroborated meant, defense counsel argued that the State could have called A.R. to testify to corroborate K.W.'s testimony. Defense counsel also questioned why the State did not call any witnesses from the 2009 investigation. The State also did not put K.W.'s wife on the stand, even though K.W. testified that she had told her wife about the abuse. Defense counsel suggested that K.W. and H.S. fabricated their stories so that Patti would gain an advantage in her divorce from the defendant with respect to the custody of O.A. Defense counsel also suggested that K.W. was angry at the defendant for his disapproval of her lifestyle choices.

¶ 10        In rebuttal to defense counsel's statements regarding A.R., the State said: "[Defense counsel] makes a point of saying, well, why didn't they call [A.R.] as a witness? Well, first of all, the defense has subpoena powers just like the government." Defense counsel objected, arguing that he had no burden of proof and did not have to call any witnesses. The trial court overruled the objection; it found that the comment had nothing to do with shifting the burden of proof but was rather rebutting the suggestion that the State failed to do something to make the case clearer. The State then clarified to the jury that, while the defendant had subpoena powers, he had no burden of proof in the case. The State went on to argue that it could not call A.R. to testify as to what K.W. told A.R. because it would be hearsay. The State defined hearsay as "something that's said outside of court." The State went on to say that "It's a rule we can't bring in hearsay, so for the defense to suggest to you that I should call [A.R.] to talk about what [K.W.] told her, he knows I can't do that." The State also argued that whatever K.W. told her wife was hearsay, so the State could not bring the wife in to testify about what K.W. said. The State argued that defense counsel knew that the State could not have K.W.'s wife testify for that reason. Defense counsel did not

5

object to the State's definition of hearsay or its related argument explaining why the State could not call A.R. or K.W.'s wife to testify. The jury was given instructions, including instructions regarding credibility, but not given an instruction defining hearsay or its exceptions. The jury found the defendant guilty of all six charges, three counts of predatory criminal sexual assault of a child and three counts of criminal sexual assault.

¶ 11       The defendant filed a motion for a new trial, contending that there was insufficient evidence of his guilt and that it was error to allow the State to argue in rebuttal that the defendant could have called witnesses to testify. The trial court denied the motion and sentenced the defendant to mandatory life sentences on the predatory criminal sexual assault of a child convictions and five years' imprisonment on each of the criminal sexual assault convictions.

¶ 12                                                    ANALYSIS

¶ 13       The defendant argues that he was under no obligation to produce any evidence and that the State's rebuttal argument improperly shifted the burden of proof. The defendant contends that the mistake was compounded by misstating the law on hearsay. The defendant contends he did not invite the State's comments. The State argues that its closing argument did not shift the burden to the defendant and, if there was any error, it was harmless error. The State contends that any challenge to an error in the hearsay comments was forfeited and there was no plain error because the evidence was not closely balanced.

¶ 14       Prosecutors are afforded wide latitude in closing argument, and even improper remarks do not merit reversal unless they result in substantial prejudice to the defendant. *People v. Olla*, 2018 IL App (2d) 160118, ¶ 40. The prosecutor may properly comment on the evidence presented or reasonable inferences drawn from that evidence, respond to comments made by defense counsel

that invite response, and comment on the credibility of witnesses. *Id.* We review the prosecutor's comments in the context of the entire closing argument. *Id.*

¶ 15     The first argument that the defendant contends was improper was made during the State's rebuttal. Following defense counsel's argument that the State should have called certain witnesses, specifically A.R., Patti, and K.W.'s wife, the prosecutor stated: "why didn't [the State] call [A.R] as a witness? Well, first of all, the defense has subpoena powers just like the government." The defense objected, and the trial court overruled the objection. The trial court found that the comment did not shift the burden of proof to the defendant and was responding to defense counsel's argument. The defendant raised the issue in his motion for a new trial.

¶ 16     As we found in *People v. Taylor*, 2019 IL App (3d) 160708, ¶ 31, our supreme court follows a two-step process for evaluating preserved error in a State's closing argument. First, we must determine whether the closing argument was improper. *Id.* If we find that the argument itself was improper, then we evaluate whether that improper closing argument unfairly prejudiced the defendant's right to a fair trial. *Id.* For the first step, we give deference to the trial court's determination of the propriety of the State's remarks, applying an abuse of discretion standard. *Id.* However, the second step of the analysis, whether the improper closing argument substantially prejudiced the defendant's right to a fair trial, involves a legal question that this court reviews *de novo*. *Id.* ¶ 32.

¶ 17     We find that the trial court did not abuse its discretion in finding that the State's rebuttal argument that the defendant also had subpoena powers was proper and did not improperly shift any burden to the defendant. In *People v. Kliner*, 185 Ill. 2d 81, 153 (1998), the Illinois Supreme Court found that the prosecutor's comments in rebuttal telling the jury that the defendant also had subpoena powers to call witnesses were not improper "because they were based on reasonable

7

inferences drawn from the evidence or invited by the closing arguments of defense counsel." Similarly, considered in the context of these proceedings, the State's argument was invited by the closing argument of defense counsel. In addition, the jury was reminded contemporaneously that the State had the burden of proving the defendant guilty beyond a reasonable doubt and that the defendant had no burden. The jury was also instructed regarding that burden of proof, so it was made clear to the jury that the State could not shift the burden of proof to the defendant. *Id.*

¶ 18      Next, the defendant contends that, after the subpoena argument, the State misstated the law of hearsay, argued that the hearsay rule prevented it from calling K.W.'s wife and A.R. as witnesses, and argued that defense counsel knew the testimony was barred by the hearsay rule. Defense counsel did not object to the hearsay arguments, resulting in the forfeiture of that claim of error, but asks for plain error review, under both prongs of plain error. The first step in analyzing for plain error is determining if a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 19      The State told the jury that hearsay was "something that's said outside of court," a definition that is, at best, incomplete and then argued that the hearsay rule prevented it from calling K.W.'s wife or A.R. as witnesses. The hearsay rule generally prohibits as evidence an out-of-court statement that is offered to prove the truth of the matter asserted. *People v. Williams*, 238 Ill. 2d 125, 143 (2010); Ill. Rs. Evid. 801(c) (eff. Oct. 15, 2015) and 802 (eff. Jan. 1, 2011). Also, there are exceptions to the hearsay rule that may have been applicable in this case. See *People v. Cuadrado*, 214 Ill. 2d 79, 90 (2005) (exception to the hearsay rule for prior out-of-court statement when it is suggested that the witness had recently fabricated the testimony or had a motive to testify falsely, and prior statement was made before the motive to fabricate arose); *People v. Newbill*, 374

Ill. App. 3d 847, 851 (2007) (statutory hearsay exception for statements of identification pursuant to section 115-12 of the Code).

¶ 20 We find that the State committed a clear error when it misstated the law regarding hearsay and then compounded that with the implication that was why the witnesses were not called (the defendant "knows I can't [offer] that"). It is error "to suggest that evidence of guilt existed which, because of defendant's objection, cannot be brought before the jury." *People v. Emerson*, 97 Ill. 2d 487, 497 (1983); *People v. Shief*, 312 Ill. App. 3d 673, 679 (2000) (prosecutor's remarks improperly inferred "that the defense intentionally kept the reports from the jury and that they contained information that would have unequivocally established defendant's guilt and made a trial unnecessary").

¶ 21 Although we have found clear error, we will remand for a new trial only if (1) the evidence is closely balanced or (2) the error was so serious it denied the defendant a fair trial. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). When determining whether the evidence is closely balanced, when the only evidence consists of two differing accounts of the same event, with no corroborating evidence, courts often find the credibility contest to be closely balanced. See *People v. Naylor*, 229 Ill. 2d 584, 608 (2008) (holding that evidence was closely balanced where "[t]he evidence boiled down to the testimony of the two police officers against that of defendant"); *People v. Vesey*, 2011 IL App (3d) 090570, ¶ 17 (evidence was closely balanced when the trial came down to the correctional officer's word versus the defendant's). In determining whether the evidence is closely balanced, this court "must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *People v. Sebby*, 2017 IL 119445, ¶ 53. Although the testimony of K.W. and H.S. contained some similarities, they testified regarding events that occurred during different time frames. The credibility of both K.W.

and H.S. was challenged in that the defense elicited testimony that both had denied that the abuse occurred when they were questioned in 2009. There was no physical evidence, no third party testimony even putting the defendant alone with K.W or H.S., and no evidence suggesting the defendant's consciousness of guilt. *Cf. People v. Effinger*, 2016 IL App (3d) 140203, ¶ 26 (evidence was not closely balanced when two witnesses put the victim and the defendant together on a public sidewalk and the defendant gave a false name, which indicated a consciousness of guilt). Thus, we find that the case involved a credibility contest between K.W. and the defendant and H.S. and the defendant. As such, we find the evidence to be closely balanced for purposes of a plain error analysis. Finding plain error on the first prong of the analysis, we need not address the second prong.

¶ 22 We reverse the defendant's convictions and remand for a new trial. Since we find that the State presented sufficient evidence to sustain the defendant's convictions, a retrial will not subject defendant to double jeopardy. See *People v. Miller*, 2013 IL App (1st) 110879, ¶ 87 (citing *People v. Taylor*, 76 Ill. 2d 289, 309 (1979)). Since we are reversing on the closing argument issue, we need not address the defendant's ineffective assistance of counsel argument.

¶ 23                                          CONCLUSION

¶ 24 The judgment of the circuit court of Henry County is reversed and remanded.

¶ 25 Reversed and remanded.

¶ 26 JUSTICE SCHMIDT, dissenting:

¶ 27 I agree with the majority's analysis of *People v. Kliner* and consequently the holding that the trial court correctly found that the State's rebuttal argument did not improperly shift the burden to defendant. However, the evidence was not closely balanced.

10

¶ 28    When determining whether the evidence is closely balanced, we conduct a qualitative, commonsense assessment of the totality of the evidence within the context of the case. *Sebby*, 2017 IL 119445, ¶ 53. Evidence is closely balanced "when the only evidence consists of two differing accounts of the same event, with no corroborating evidence." *Supra* ¶ 21 (citing *Naylor*, 229 Ill. 2d at 608; *Vesey*, 2011 IL App (3d) 090570, ¶ 17).

¶ 29    After reviewing the record, the evidence of defendant's guilt is overwhelming. The jury heard the testimony of defendant's daughter and stepdaughter that he repeatedly sexually assaulted them over an extended period of time. They also heard from Johanna Hager, an expert witness in forensic interviewing and clinical psychology. Hager testified that a victim's delayed disclosure of sexual abuse by a family member is a common occurrence. It is also common for a victim to disclose sexual abuse after previous denials, a practice called "tentative disclosure." Victims are more likely to keep sexual abuse by a family member private but can be motivated to disclose the abuse due to concern for a younger sibling.

¶ 30    The majority finds the evidence closely balanced because of a "credibility contest." *Supra* ¶ 21. What credibility contest? Not one witness contradicted the victims' testimony. In both *Naylor* and *Vesey*, cited by the majority for support, the defendant either testified or put witnesses on the stand to offer a competing version of events. Here, there is no competing version of events, as defendant did not testify nor did he call any witnesses. A qualitative, commonsense evaluation of the totality of the evidence shows that the evidence is not closely balanced.

¶ 31    Assuming the hearsay argument was error, it did not amount to plain error because as discussed above the evidence is not closely balanced but, rather, overwhelming. We must honor defendant's forfeiture.

¶ 32    We should affirm.

**No. 3-17-0848**

| | |
|---|---|
| **Cite as:** | *People v. Williams*, 2020 IL App (3d) 170848 |
| **Decision Under Review:** | Appeal from the Circuit Court of Henry County, Nos. 16-CF-411, 16-CF-412; the Hon. Jeffrey W. O'Connor, Judge, presiding. |
| **Attorneys for Appellant:** | Andrew S. Gable, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Matthew Schutte, State's Attorney, of Cambridge (Patrick Delfino, Thomas D. Arado, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |