NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230041-U

NO. 4-23-0041

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 22, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| MASON E. BERTRAND, | ) | No. 20CF74 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer M. Ascher, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Lannerd and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The appellate court affirmed defendant's convictions and sentence because (1) the State presented sufficient evidence for the jury to find defendant guilty beyond a reasonable doubt of sexual exploitation of a child, (2) defendant's convictions for aggravated criminal sexual abuse and unlawful restraint did not violate the one-act, one-crime rule, (3) defendant was not denied a fair trial, and (4) defendant's sentences did not violate the proportionate penalties clause of the Illinois Constitution.

¶ 2    In January 2020, defendant, Mason E. Bertrand, was charged with (1) three counts of predatory criminal sexual assault (720 ILCS 5/11-1.40(a)(1) (West 2018)), (2) three counts of criminal sexual assault (*id.* § 1.20(a)(3)), (3) one count of aggravated criminal sexual abuse (*id.* § 1.60(b)), (4) one count of unlawful restraint (*id.* § 10-3(a)), and (5) one count of sexual exploitation of a child (*id.* § 11-9.1(a)(1)). The charges alleged generally that from April 2018 to May 2019, defendant committed various acts of sexual penetration and conduct with his minor daughter, A.B. (born May 2006), and, on one occasion, detained A.B. in her bedroom.

¶ 3        In September 2022, a jury found defendant guilty on all counts. Later, the trial court sentenced defendant to an aggregate sentence of 69 years in prison.

¶ 4        Defendant appeals, arguing that (1) the State's evidence was insufficient to prove him guilty beyond a reasonable doubt of sexual exploitation of a child, (2) his conviction for unlawful restraint was based on the same physical conduct as his conviction for aggravated criminal sexual abuse, in violation of the one-act, one-crime rule, (3) he was denied a fair trial, and (4) his sentences for the three predatory criminal sexual assault convictions violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). We disagree and affirm.

¶ 5                              I. BACKGROUND

¶ 6                              A. The Charges

¶ 7        In January 2020, the State charged defendant with (1) three counts of predatory criminal sexual assault, (2) three counts of criminal sexual assault, (3) one count of aggravated criminal sexual abuse, (4) one count of unlawful restraint, and (5) one count of sexual exploitation of a child.

¶ 8        Regarding the predatory criminal sexual assault charges, the State alleged that between April 1, 2018, and May 23, 2019, defendant, who was over the age of 17 years, knowingly placed his (1) hand in contact with A.B.'s vagina, (2) penis in contact with A.B.'s vagina, and (3) penis in contact with A.B.'s anus. The State further alleged that he did each of these acts for the purpose of sexual gratification or arousal when A.B. was under the age of 13 years.

¶ 9        Regarding the criminal sexual assault charges, the State alleged that between May 23, 2019, and September 14, 2019, defendant, who was A.B.'s family member and 17 years of

age or older, knowingly placed his (1) finger in A.B.'s vagina, (2) penis in A.B.'s vagina, and (3) penis in A.B.'s anus when A.B. was under the age of 18 years.

¶ 10 Regarding the aggravated criminal sexual abuse charge, the State alleged that on or about September 15, 2019, defendant, who was A.B.'s family member and 17 years of age or older, knowingly placed his hand in contact with the vagina of A.B. for the purpose of the sexual gratification or arousal of the defendant.

¶ 11 Regarding the unlawful restraint charge, the State alleged that on or about September 15, 2019, defendant knowingly and without legal authority detained A.B. in a bedroom located.

¶ 12 Regarding the sexual exploitation of a child charge, the State alleged that between April 1, 2019, and September 14, 2019, defendant knowingly engaged in a sexual act in the presence of A.B.

¶ 13 B. The Jury Trial

¶ 14 In September 2022, the trial court conducted defendant's jury trial.

¶ 15 1. *The Evidence*

¶ 16 a. Jessica B.

¶ 17 Jessica B. testified that she was A.B.'s stepmother and defendant was A.B.'s father. In September 2019, she was married to defendant and she, defendant, and A.B. lived together in an apartment in Auburn, Illinois, along with several of A.B.'s siblings. On the morning of September 15, 2019, around 3 a.m., Jessica woke up and went to the bathroom, discovering that defendant was not in bed with her. After using the bathroom, Jessica looked around the house for defendant, eventually opening the door to A.B.'s bedroom and turning the light on. Jessica testified as follows:

"When I flipped on the light, the first thing I seen was [A.B.] And I noticed that she didn't have any pants on, and she had a towel underneath her butt, and she had a blanket across her from her lower abdomen to her face, and she was holding it up to her face like this. And then the next thing I seen was [defendant] in between her legs sweating."

¶ 18 Jessica cursed at defendant and told A.B. to get dressed. Jessica and defendant had an argument, during which defendant said to her "[h]ow sorry he is and how he will never do it again." The next morning, Jessica reached out to Melissa Warwick, the school social worker, and told her to speak with A.B. that day when A.B. was at school. Later that day, Jessica spoke with members from the Illinois Department of Children and Family Services.

¶ 19 Jessica thereafter moved out with her biological children. However, A.B. remained at the residence with defendant for a short time until she moved in with her biological mother.

¶ 20 Within a week of that incident, defendant began a text message conversation with Jessica using Facebook Messenger. Screenshots of that conversation were admitted into evidence as People's exhibit Nos. 1-A through 1-R. In those messages, defendant begged Jessica to talk to him about what happened and asked her for forgiveness. At one point, Jessica asked him, "If [A.B.] got pregnant what would you have done[?] [C]ame to me and say [A.B.] is having your child or just call her a whore." Defendant responded, "I wasn't thinking..that [is] why I am seeking help…." He further messaged Jessica saying (1) he wished he could "take it all back," (2) he "shouldn't have never ever looked at [A.B.] in that way," and (3) he did not want the marriage to end.

¶ 21 On cross-examination, Jessica testified that when she discovered defendant with

A.B., defendant was wearing a shirt and basketball shorts, but the shorts were "barely on."

¶ 22                                    b. Melissa Warwick

¶ 23        Warwick testified that she was a social worker for Auburn Community Unit School District No. 10 and had known A.B. for about six years. Warwick provided group counseling for students, and A.B. attended that group once a week. On September 16, 2019, Warwick received a Facebook message from Jessica that caused her concern. After reading the message, Warwick met with A.B. at her junior high school. Warwick stated the following regarding that meeting:

> "[A.B.] was very visibly upset. *** [H]er hands were shaking when she
> came in, which is out of the norm for her, *** because she's comfortable with me.
> She looked as if she probably hadn't showered in a few days, had a dirty
> sweatshirt on, dirty pants on, *** she was crying."

¶ 24                                    c. Leah J.

¶ 25        Leah J. testified that she was the biological mother of A.B., who was born in 2006. In September 2019, after Leah received a message from Jessica, she immediately filed for full custody of A.B. and picked A.B. up from defendant's care. Later, Leah "confronted" defendant outside a grocery store about the incident with A.B. Leah testified that defendant "said that he didn't know why he did it, he didn't mean for it to get out of hand like that. He said that she looked like me, *** just that type of stuff." He also apologized and gave excuses as to "why it happened."

¶ 26                                    d. Careyana Brenham

¶ 27        Careyana Brenham testified that she was an expert in child sexual abuse evaluations and she met with A.B. in October 2019. During that meeting, A.B. told Brenham that

defendant had first touched her sexually about a month before her twelfth birthday and he continued to do so almost nightly up until September 15, 2019, when Jessica walked in on her and defendant. A.B. indicated that defendant touched her in her genital and anal areas with his hands, penis, and mouth. She also said that he penetrated her anally and with his penis and fingers.

¶ 28                                             e. A.B.

¶ 29          A.B., who was 16 years old at the time of her testimony, stated that on the morning of September 15, 2019, she woke up to defendant entering her room. A.B. stated, "[H]e had came in and he started physically touching me,*** specifically fingering me." A.B. specified that defendant used his fingers to penetrate her vagina. Defendant then took her clothes off, including her pants and underwear. There was a towel underneath her at the time. While defendant was touching A.B., Jessica came into the room and she and defendant began "yelling and fighting."

¶ 30          A.B. testified that defendant began touching her sexually when she was 11, approximately one month before her twelfth birthday. When asked by the prosecutor, "Do you recall anything happening right when that all started between you and your dad?" A.B. replied, "I had gone to bed early one night, and I woke up. I went to go get a snack from the fridge and a drink. I ended up trying to use the restroom, and he was standing in the doorway of the bathroom touching himself." A.B. clarified that defendant was touching his penis with his hands. Upon seeing defendant, A.B. immediately went back to bed, leaving her snack on the kitchen table. A.B. testified, "[H]e had tried to talk to me [after the incident], but I kind of just ignored it and tried to leave it at that."

¶ 31          A.B. further testified that incidents like the one she described from September 15,

2019, occurred frequently, always in her bedroom. On more than one occasion, defendant used his fingers to penetrate A.B.'s vagina, which occurred "[t]wo or three times a week" and always at "nighttime." He had also used his tongue and his penis to penetrate her vagina and penetrated her anus with his penis. The penetration of her vagina and her anus with his penis occurred when she was 12 and 13 years old. While the incidents occurred, the rest of the family were in their rooms. If defendant heard a noise from one of A.B.'s younger siblings, defendant would leave and "put them back down" to bed.

¶ 32　　　A.B. further testified that when defendant would penetrate her with his fingers, he would use his other hand to touch his penis until he left. When asked what caused him to stop touching himself, A.B. stated as follows:

> "[E]ither he would be done or whenever he would hear a noise. ***
> [S]ometimes he would just leave or sometimes—***, it wasn't often that he
> would say something to me, but sometimes he would tell me to clean up. ***
> [W]hen he would ejaculate, I would have to clean it up or either I would have to
> clean up the towel underneath me."

¶ 33　　　A.B. testified that she did not know the meaning of "ejaculate" when she was younger but learned about it as she got older.

¶ 34　　　When asked by the prosecutor, "Was there ever a time that you tried to get him to stop?" A.B. replied, "Yes. *** I would try to push him off." However, he would not get off. Later, A.B. was asked, "W[ere] there times where you felt like you were not able to leave?" A.B. replied, "Yes."

¶ 35　　　A.B. testified as follows regarding how she felt during the period of her life that defendant was touching her: "I was extremely depressed. ***[A]nd there was actually times

where I was taken to the hospital to talk about depression. And I was supposed to go to Lincoln Prairie at least twice, but [defendant] refused to let me go."

¶ 36      Defendant did not present any evidence.

¶ 37                  2. *The Closing Arguments*

¶ 38      During closing arguments, defense counsel asserted that the evidence of defendant's guilt was weak, pointing out the lack of forensic evidence. On rebuttal, the prosecutor explained that although the jury had not heard any forensic evidence, it had heard eyewitness testimony and circumstantial evidence. The prosecutor stated the following:

> "Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show guilt or innocence of the defendant. Circumstantial evidence should be considered by you together with all other evidence in the case in arriving at your verdict. What does that mean? *** It means that you get to think about all of the evidence that you've heard. You get to hear what happened on September 15th and what Jessica walked in on. And you get to make the reasonable inference that that is what occurred on other nights. And, thank goodness, that the events of September 15th didn't go further than the other events."

¶ 39                  3. *Jury Deliberations and Verdict*

¶ 40      During jury deliberations, the trial court received three questions. First, the jury asked, "Can we get Exhibits 1A through 1R?" (referring to the screenshots of the messages between defendant and Jessica). The parties agreed to send that evidence back to the jury. Second, the jury asked, "Can we get a better definition of Unlawful Restraint?" to which the court responded by referring the jury to the jury instructions. Third, the jury asked, "Is there any

additional definition of Unlawful Restraint with respect to the term detained? What does detained mean in this context? Are we talking about physical restraint? Does it specifically mean detained during the act[?]" The court and the parties determined that an additional definition would not be appropriate.

¶ 41 Ultimately, the jury found defendant guilty on all counts. Later, the trial court sentenced defendant to an aggregate prison sentence of 69 years. Defendant filed a motion to reconsider, arguing that his sentence was excessive because (1) the court did not properly consider mitigating evidence and (2) the sentence violated the proportionate penalties clause of the Illinois constitution (Ill. Const. 1970, art. I, § 11). The court denied the motion.

¶ 42 This appeal followed.

¶ 43 II. ANALYSIS

¶ 44 Defendant appeals, arguing that (1) the State's evidence was insufficient to prove him guilty beyond a reasonable doubt of sexual exploitation of a child, (2) his conviction for unlawful restraint was based on the same physical conduct as his conviction for aggravated criminal sexual abuse, in violation of the one-act, one-crime rule, (3) he was denied a fair trial, and (4) his sentences for the three predatory criminal sexual assault convictions violated the proportionate penalties clause. We disagree and affirm.

¶ 45 A. The Sufficiency of the Evidence

¶ 46 Defendant argues that the evidence was insufficient for the jury to find him guilty of sexual exploitation of a child because the evidence did not show that he had engaged in a sexual act—specifically, masturbation—in the presence of A.B. Alternatively, defendant argues the State did not prove beyond a reasonable doubt that A.B. was under 13 years old at the time of the offense as required for it to be classified as a Class 4 felony instead of a Class A

misdemeanor. See 720 ILCS 5/11-9.1(a)(1) (West 2018). We disagree with both of defendant's arguments.

¶ 47                    1. *The Applicable Law and Standard of Review*

¶ 48        The Illinois Supreme Court recently reiterated the familiar standard applicable to a defendant's challenge to the sufficiency of the evidence. In *People v. Jones*, 2023 IL 127810, ¶ 28, 216 N.E.3d 165, the court wrote the following:

> "In reviewing the sufficiency of the evidence in a criminal case, this court asks whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Hardman*, 2017 IL 121453, ¶ 37 [104 N.E.3d 372]. A reviewing court will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses. *Id.* All reasonable inferences from the evidence must be drawn in favor of the State. *Id.* A criminal conviction will not be overturned unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Id.*"

¶ 49        "In weighing the evidence, a trier of fact need not search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Id.* ¶ 32.

¶ 50        "A person commits sexual exploitation of a child if in the presence or virtual presence, or both, of a child and with knowledge that a child or one whom he or she believes to be a child would view his or her acts, that person: *** engages in a sexual act." 720 ILCS 5/11-9.1(a)(1) (West 2018). "Sexual act" is defined as "masturbation, sexual conduct or sexual penetration as defined in Section 11-0.1 of [the Criminal Code of 2012]." *Id.* § 9.1(b). " 'Child'

means a person under 17 years of age." *Id.*

¶ 51    Although "masturbation" is not defined by statute, that term is commonly understood to mean " 'erotic stimulation involving the genital organs commonly resulting in orgasm and achieved by manual or other bodily contact exclusive of sexual intercourse.' " *People v. Ricky T.*, 405 Ill. App. 3d 98, 100, 939 N.E.2d 501 (2010) (quoting Webster's Third New International Dictionary 1391 (1993)). "The definition of masturbation does not require that a person stimulate his or her genital organ in any specific way; an act constitutes masturbation so long as the bodily contact erotically stimulates the genital organ." *Id.* at 101.

¶ 52                          2. *This Case*

¶ 53    Defendant concedes that A.B. testified that she observed defendant " 'touching himself' on his penis while he was digitally penetrating her," but he argues that "A.B. did not testify to any of the hallmarks of masturbation," which he asserts is testimony regarding questions such as (1) whether his penis was erect, (2) how he physically manipulated his penis, or (3) what she meant by the phrase "touching himself." As an example of testimony that contains those "hallmarks of masturbation," defendant quotes the holding in *People v. Sicilia*, 2022 IL App (2d) 210496-U, ¶ 88: "The act of a man touching his genitals and moving his hand up and down, while lying in bed next to a 14-year-old girl that he had repeatedly touched inappropriately throughout the evening, clearly constituted masturbation."

¶ 54    Defendant's argument defies common sense, and to illustrate the absurdity of his argument, we paraphrase the court's holding in *Sicilia* using the evidence in the present case— namely, the act of a man touching his penis, while digitally penetrating his daughter's vagina after regularly sexually assaulting her for years, clearly constituted masturbation.

¶ 55    Moreover, A.B. testified that defendant touched his penis in front of her on

multiple occasions and even expressed that defendant stopped touching himself when "either he would be done or whenever he would hear a noise." Removing any possible confusion, A.B. then said that defendant would ejaculate and make her clean it up. Given this testimony, defendant's assertion that "A.B. did not testify to any of the hallmarks of masturbation" is baseless.

¶ 56          Defendant also argues that the State failed to prove that A.B. was under 13 years old at the time of the offense because (1) the State alleged that he committed sexual exploitation of a child between the dates of April 1, 2018, and September 14, 2019 and (2) A.B. turned 13 years old in May 2019, making her 13 during the last three months of the date range alleged in the charging document.

¶ 57          Although (1) defendant concedes that he has forfeited this argument and (2) as we will discuss *infra* ¶¶ 77-82, the evidence was not closely balanced, we note that A.B. was 11 and 12 years old for 14 of the 17 months alleged in the indictment and that A.B. testified that similar incidents where defendant would touch his penis while digitally penetrating her occurred "extremely often," which she defined as two or three times a week. Based on this testimony and construing the evidence in the light most favorable to the State, the evidence was sufficient for the jury to conclude that he committed the felony offense of sexual exploitation of a child.

¶ 58                              B. One-Act, One-Crime

¶ 59          Defendant argues that his "conviction of both unlawful restraint and aggravated criminal sexual abuse violated the first prong of the one-act, one crime rule because the State's only evidence of restraint was inherent in the charged sex offense." We disagree.

¶ 60                    1. *The Applicable Law and the Standard of Review*

¶ 61          Under the one-act, one-crime rule, "a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act." *People*

*v. Coats*, 2018 IL 121926, ¶ 11, 104 N.E.3d 1102. "[A]n 'act' [is] any overt or outward manifestation that will support a separate offense." *People v. Crespo*, 203 Ill. 2d 335, 341, 788 N.E.2d 1117, 1120 (2001). "For the State to properly obtain multiple convictions for connected acts that might be treated as a series of offenses, the State must apportion the acts to the offenses in the charging instrument and at trial." *People v. Williams*, 384 Ill. App. 3d 327, 340, 892 N.E.2d 620, 632 (2008).

¶ 62        The test for determining whether a one-act, one-crime violation has occurred involves a two-step process. "First, the court should determine whether the defendant's conduct consists of one physical act or several acts." *People v. Avelar*, 2017 IL App (4th) 150442, ¶ 23, 81 N.E.3d 607. If "the defendant has committed multiple acts, the court should then determine whether any of the charged offenses are lesser included offenses of another charged offense." *Id.* ¶ 24. "If so, then 'multiple convictions are improper; if not, then multiple convictions may be entered.' " *Id.* (quoting *People v. Rodriguez*, 169 Ill. 2d 183, 186, 661 N.E.2d 305, 306-07 (1996)).

¶ 63                                    2. *This Case*

¶ 64        Defendant contends that the evidence the State presented for the aggravated criminal sexual abuse and unlawful restraint contemplated only one act—namely, defendant digitally penetrating A.B. Accordingly, defendant argues, because there was no other evidence presented for a separate act by defendant on September 15, 2019, that impeded A.B.'s freedom of movement, the unlawful restraint conviction violates the one-act, one-crime rule. We disagree.

¶ 65        Looking at the charging instruments, the State premised the aggravated criminal sexual abuse charge on defendant placing his hand in contact with A.B.'s vagina. By contrast, the State premised the unlawful restraint charge on defendant detaining A.B. in her bedroom.

Although these charges could pertain to one act, given A.B.'s testimony that she tried to push defendant off her but failed to do so, her testimony contemplates at least one act of defendant physically restraining her against her will that is separate from his act of digitally penetrating her vagina.

¶ 66　　　　Anticipating our conclusion that A.B.'s testimony referred to separate acts, defendant asserts that even if that testimony was sufficient to show a separate act from the aggravated criminal sexual abuse, the State's reliance on the act of holding A.B. down against her will constitutes a change in the State's theory of the case, which cannot now provide a basis for defendant's unlawful restraint conviction. See *Crespo*, 203 Ill. 2d at 343 ("[T]o apportion the crimes among the various stab wounds for the first time on appeal would be profoundly unfair."). However, defendant preventing A.B. from pushing him off her is entirely consistent with the State's theory of the case as set out in (1) the charging instrument, which says that defendant detained A.B. in her room, and (2) the State's opening and closing arguments, which highlighted A.B.'s attempt to escape from under defendant.

¶ 67　　　　Accordingly, defendant's conviction for unlawful restraint does not violate the one-act, one-crime rule.

¶ 68　　　　　　　　　　C. Defendant's Fair Trial Claims

¶ 69　　　　Defendant argues that he was denied a fair trial because (1) the prosecutor misstated the law during closing arguments when she told the jury that it "could consider proof of one charged crime as creating an inference that [defendant] had a propensity to commit the other charged crimes" and (2) the trial court violated Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) when it failed to ask every member of the jury whether they understood and accepted each of the *Zehr* principles (see *People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062

(1984)). In the alternative, defendant argues that cumulative error denied him a fair trial. We disagree.

¶ 70    As an initial matter, defendant concedes he has forfeited these claims on appeal because he did not raise any of these claims in the trial court. See *In re M.P.*, 2020 IL App (4th) 190814, ¶ 44, 155 N.E.3d 577 ("A defendant forfeits an issue for purposes of appellate review by failing to object to the alleged error or raise it in a written posttrial motion."). Nonetheless, he contends that we may review his claims as either first-prong plain error or ineffective assistance of counsel.

¶ 71                    1. *The Applicable Law*

¶ 72                    a. Plain Error

¶ 73    The usual first step under either prong of the plain-error doctrine is to determine whether there was an error at all. *People v. Matthews*, 2017 IL App (4th) 150911, ¶ 17, 93 N.E.3d 597. When a defendant claims first-prong plain error, he must prove that an error occurred and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. *Id.* ¶ 26. When determining whether the evidence was closely balanced, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case. *People v. Sebby*, 2017 IL 119445, ¶ 53, 89 N.E.3d 675. Typically, the evidence is closely balanced if "the outcome of this case turned on how the finder of fact resolved a 'contest of credibility.' " *Id.* ¶ 63 (quoting *People v. Naylor*, 229 Ill. 2d 584, 606-07, 893 N.E.2d 653, 667 (2008)). A "contest of credibility" exists when (1) both sides presented a plausible version of events and (2) there is no extrinsic evidence to corroborate or contradict either version. *Id.* ¶¶ 60-63.

¶ 74                    b. Ineffective Assistance of Counsel

¶ 75　　　　　　"To demonstrate ineffective assistance of counsel, a defendant must show that (1) the attorney's performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the defendant in that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *People v. Jackson*, 2020 IL 124112, ¶ 90, 162 N.E.3d 223 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "A reasonable probability is a probability which undermines confidence in the outcome of the trial." *People v. Sturgeon*, 2019 IL App (4th) 170035 ¶ 84, 126 N.E.3d 703. "Because the defendant must satisfy both prongs of this test, the failure to establish either is fatal to the claim." *Jackson*, 2020 IL 124112, ¶ 90 (citing *Strickland*, 466 U.S. at 697).

¶ 76　　　　　　　　　　　　　　　2. *This Case*

¶ 77　　　　　　Here, defendant's claims of plain error and ineffective assistance of counsel fail because (1) the evidence was not closely balanced and (2) even if his attorney's performance was deficient, defendant was not prejudiced.

¶ 78　　　　　　Defendant argues that the evidence was closely balanced regarding (1) the three counts of predatory criminal sexual assault, (2) the three counts of criminal sexual assault, and (3) the single count of sexual exploitation of a child. Specifically, defendant argues that the State's evidence regarding those counts "boiled down to one thing: A.B. claiming to others that [defendant] committed various acts." Defendant contends that the evidence amounts to a credibility contest because (1) "the State did not present any direct evidence, such as the testimony of an eyewitness or physical evidence, that the events alleged in the remaining counts occurred" and (2) defendant pleaded not guilty to the charges.

¶ 79　　　　　　This argument is completely without merit. Defendant is incorrect that the State

- 16 -

did not present eyewitness evidence because the State presented the testimony of A.B., who is both the victim *and eyewitness* of defendant's assaults.

¶ 80 Further, defendant does not point to anything in the record showing why this case is closely balanced, nor does he argue that A.B.'s testimony was not credible or insufficient to support the charges against him. Instead, defendant implicitly asks this court to conclude as a matter of law that the unimpeached testimony of a sex crime victim against the not guilty plea of a defendant makes the case closely balanced because the convictions came down to the credibility of one witness—in defendant's words, "a credibility contest."

¶ 81 Again, this contention is completely without merit. As the supreme court recently explained, in the absence of a defendant's testimony or other contrary evidence, a "credibility contest" cannot exist when the jury heard only one account of what happened. See *People v. Williams*, 2022 IL 126918, ¶¶ 60-61, 210 N.E.3d 1207 (concluding there is not a credibility contest when there are not competing accounts); see also *People v. Williams*, 2020 IL App (3d) 170848, ¶ 30, 184 N.E.3d 1079 (The Third District opinion the supreme court reversed, in which Justice Schmidt wrote in dissent the following: "The majority finds the evidence closely balanced because of a 'credibility contest.' *** What credibility contest? Not one witness contradicted the victims' testimony.").

¶ 82 Although the absence of a "credibility contest" is not fatal to defendant's claim (see *Williams*, 2022 IL 126918, ¶ 61 (noting that the defendant's decision not to present evidence was not fatal to a first-prong plain-error argument)), we nonetheless conclude that the evidence of defendant's guilt was overwhelming because (1) A.B.'s testimony was consistent and uncontradicted and (2) her credibility was bolstered by her mother's testimony and defendant's messages corroborating her account of the assault on September 15, 2019. Further, because the

evidence was overwhelming, even if we agreed with defendant that his attorney performed deficiently in the manners defendant alleged, there is not a reasonable probability that absent those errors the outcome would have been different.

¶ 83    Accordingly, defendant's claims of plain error and ineffective assistance of counsel fail.

¶ 84    D. The Proportionate Penalties Clause

¶ 85    Last, defendant argues that the trial court erred by imposing Class X sentencing for counts 1 through 3 in violation of the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) because subsection (a)(1) of the predatory criminal sexual assault statute (720 ILCS 5/11-1.40(a)(1) (West 2018)) and subsection (c)(1)(i) of the aggravated criminal sexual abuse statute (*id.* § 11-1.60(c)(1)(i)) have identical elements but carry different penalties.

¶ 86    The supreme court recently addressed this exact issue in *People v. Johanson*, 2024 IL 129425, ¶ 14, writing as follows:

> "The plain language of these statutes demonstrates a clear difference between the two offenses. Although both require the victim to be under the age of 13, aggravated criminal sexual abuse concerns any touching or fondling for purposes of sexual gratification or arousal, whereas predatory criminal sexual assault of a child requires direct contact with the sex organ or anus. While acts that satisfy the contact element of predatory criminal sexual assault of a child also satisfy the element of sexual conduct, the opposite is not always true.
> ***
> Consequently, the two offenses do not contain identical elements. See generally

*People v. Gallegos-Moreno*, 2023 IL App (1st) 220958-U (agreeing with the appellate court's decision in the case at bar); *People v. D.K.*, 2023 IL App (2d) 220267-U (same). The legislature could have reasonably believed that contact between the sex organ or anus of the defendant and a child victim required a more severe penalty. Therefore, the more severe sentence provided for the offense of predatory criminal sexual assault of a child is not constitutionally disproportionate to the less severe sentence for the offense of aggravated criminal sexual abuse."

¶ 87　　　Accordingly, the trial court did not err by imposing Class X sentencing for counts 1 through 3 because "the offense of predatory criminal sexual assault of a child does not contain identical elements to the offense of aggravated criminal sexual abuse and therefore does not violate the proportionate penalties clause of the Illinois Constitution." *Id.* ¶ 20.

¶ 88　　　　　　　　　　　　　　　III. CONCLUSION

¶ 89　　　For the reasons stated, we affirm the trial court's judgment.

¶ 90　　　Affirmed.